IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY WILSON,                              *
        Plaintiff,

                                      *

    v.                                       CIVIL ACTION NO.  PJM-08-2989
                                        *

WARDEN, et al.,
        Defendants.                          *
                                      ******

## MEMORANDUM OPINION

      Defendants Warden, Corporal Dominique Freeman,  and Correctional Officers II Vashnie Pilgrim and Ricardo Wallace[1] have moved for dismissal or summary judgment against Anthony Eugene Wilson.  Paper No. 18.  Plaintiff has filed a response (Paper No. 23) to which Defendants have replied.  Paper No. 30 and 31.  No hearing is necessary to resolve the issues before the Court.  *See* Local Rule 105.6 (D. Md. 2009).  For the reasons stated below, the dispositive motion filed by Defendants, treated as a motion for summary judgment, will be granted.

### Standard of Review

### Motion for Summary Judgment

      Fed. R. Civ. P. 56(c) provides that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

---

[1] Plaintiff  also named Gregory Ross, M.D. as a defendant.  Service was not effected on Dr. Ross.  For reasons that follow,  even if Ross had been properly been served,  the Complaint against him would be subject to dismissal.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The Court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  With this standard in mind, the Court now examines Plaintiff's claim.

## Background

Plaintiff alleges that on July 23, 2008, he was being transported in three-piece restraints from the Maryland Correctional Adjustment Center (MCAC) to court.  As he put weight on to the support step connected to the transport van, the step broke and Plaintiff, unable to break his fall, hit the pavement hard, injuring his knee and lower back. Defendant Pilgrim accused Plaintiff of faking his

injury while Defendant Freeman asked if Plaintiff was okay and Defendant Wallace transported Plaintiff to the medical department via wheelchair. Gregory Ross, M.D., provided him a knee wrap, muscle rub, and ibuprofen for pain relief. Plaintiff states that he was denied proper medical treatment, as it took over four months to receive an x-ray for his back injury which revealed inflammation of his lower back. As a result of the x-ray Plaintiff was provided a back brace, muscle relaxer and analgesic pain relievers. Plaintiff also alleges that despite his injury, he was forced to go to court that day. Paper Nos. 1 and 4.

Defendants, for their part, deny that Plaintiff fell when the step broke. Freeman notes that she was watching Plaintiff the entire time he was boarding the van and at no time was he injured. Pilgrim avers that she was bracing Plaintiff with her arms and prevented him from falling when the step broke. Freeman reports that when she asked if Plaintiff was okay, Plaintiff replied, "No because I am trying to get paid on the State." Paper No. 18, Ex. 1.

Wallace, who was not present when the step broke, escorted Plaintiff to the MCAC medical department where medical personnel evaluated and cleared him to be transported to court. Wallace stated that he informed Plaintiff that because of his claimed injuries he did not have to go to court, but Plaintiff indicated his desire to go. Plaintiff was escorted back to the van and a valet step was used to assist him in boarding the van. Pilgrim avers that she observed Plaintiff in the court lockup where he voiced no complaints regarding any injuries; rather, he was observed walking around, laughing and playing with other inmates, in no apparent discomfort. *Id*.

In 2006, the DOC fleet management purchased 35 steps to be used with inmate transport vans, due to breaking of retractable steps on the vans. Paper No. 18, Ex. 3. Before a DOC vehicle is operated, the operator is required to visually inspect the van along a number of parameters. Paper

No. 31, Attachment DCD 80-3.  Inspection of the retractable step is not required in this inspection. *Id*.  The repair log for the van used to transport Plaintiff during the time period in question reveals that no step-related repairs were made or reported prior to the incident.  *Id*., Ex. 2.

Plaintiff's undisputed medical records demonstrate that Plaintiff was evaluated by Dr. Gregory Ross, on July 23, 2008, minutes after the fall.  Plaintiff was diagnosed as suffering from back pain due to muscle spasms and a left knee contusion.  He was prescribed a wrap for the knee and Ibuprofen.  Paper No. 23, Attachment.  Plaintiff filed sick call slips on July 24 and July 27, 2008, while housed at the Maryland Correctional Training Center (MCTC) and North Branch Correctional Institution (NBCI),  respectively, complaining of back and knee pain and requesting an x-ray.  Paper No. 18, Ex. 4, p. 2, 5.  A physician's note was generated on July 28, 2008, indicating Plaintiff needed to be  rescheduled for evaluation.  His medication chart indicated he was receiving Baclofen, a muscle relaxer and anti-spastic agent, as well as Salsalate, a non steroidal anti-inflammatory drug.  *Id.,* p. 7.  Plaintiff was evaluated by Cynthia Rounds, RN, on July 30, 2008, at MCTC for complaints, inter alia, of pain in his back and knee.  Plaintiff was observed walking without difficulty, bending down at the cell door, and talking through the feed-up slot.  No deformity, swelling or ecchymosis of the back was noted.  No swelling was observed in the left knee. Plaintiff was also observed jumping down from the top bunk.  *Id*. p. 9.  Due to his subjective complaints, Plaintiff's dosage of Ibuprofen was increased and Plaintiff was scheduled to be seen by the physician. *Id*. p. 9 and 12.

Plaintiff was seen on August 14, 2008, by Physician Assistant Swecker, for complaints of pain in his neck and knee.  Plaintiff's objective examination was unremarkable.  He was assessed as suffering from lower back and cervical pain and left knee pain.  He was prescribed Naproxen and

4

spine and knee x-rays were ordered. *Id.*, p. 15, 16.

Plaintiff submitted a sick call slip on September 8, 2008, wherein he complained of low back pain. He did not appear for his sick call. *Id.*, p. 18. Plaintiff was next evaluated on October 10, 2008, due to continued complaints of back pain. The objective evaluation was unremarkable. Plaintiff was provided Motrin and advised to return as needed. *Id.*, p. 19  On October 24, 2008,  Plaintiff was evaluated by Nurse Practitioner McVey, who directed that x-rays of Plaintiff left knee and spine be taken. Plaintiff was provided Robaxin, Ibuprofen, muscle rub, and an elastic back brace support. He was directed to follow up in one or two weeks. *Id.*, p. 20-23.

The report dated October 29, 2008, regarding Plaintiff's x-ray reveals no significant bony abnormality and moderate sclerosis of the inferior S-I joints, leading to a diagnosis of moderate bilateral sacroiliitis. *Id.*. 24. The x-ray of Plaintiff's knee was negative. Id., p. 25.

Plaintiff was again evaluated on November 6, 2008, where he reported that his back and knee pain were greatly improved with the current treatment of muscle rub, Robaxin and Motrin. Plaintiff was educated concerning his condition and directed to follow up in 30 days. *Id.*, p. 26-27.

Plaintiff again complained of back pain in April, 2009. X-rays were again taken of Plaintiff's spine. No changes were noted from the prior x-rays. *Id.*, p. 31-33.

### Analysis

The Court interprets the Complaint to raise state tort claims of negligence and medical malpractice, as well as Eighth Amendment claims arising out of a failure to protect Plaintiff from injury and a failure to provide medical care. The Court must first examine Defendants' assertion that Plaintiff's case should be dismissed in its entirety due to Plaintiff's failure to exhaust available administrative remedies. The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner

plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. §
1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983
of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional
facility until such administrative remedies as are available are exhausted." The Supreme Court has
interpreted the language of this provision broadly, holding that the phrase "prison conditions"
encompasses "all inmate suits about prison life, whether they involve general circumstances or
particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*,
534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Plaintiff's allegations
regarding the defective step and correctional employees response to Plaintiff's fall.[2] His complaint
must be dismissed, unless he can show that he has satisfied the administrative exhaustion
requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a
defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

      The PLRA's exhaustion requirement is designed so that prisoners pursue administrative
grievances until they receive a final denial of the claims, appealing through all available stages in the
administrative process. *Id*. at 530; *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal
of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative
review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003)
(noting that a prisoner must appeal administrative rulings "to the highest possible administrative
level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all
administrative steps to meet the exhaustion requirement, but need not seek judicial review); *see e.g.*
*Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's

---

[2] Because prison health care is provided by contractual medical personnel, the administrative remedy process is not

6

lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction to its prisoners.  If this request is denied, the prisoner has thirty calendar days to file an appeal with the Commissioner of Correction.  If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO").  *See Chase*, 286 F.Supp. 2d at 529 no. 10; *see also* Md. Code Ann. Corr. Serv. §§ 10-201 to 210.

Plaintiff indicates in his complaint that he filed a complaint with the Warden.  He does not indicate that he pursued, beyond this level, his administrative remedies.  Paper Nos. 1 and 4. Institutional records indicate that Plaintiff did not file any complaint with the IGO regarding this incident. Nor did Plaintiff file any initial administrative remedy request regarding this incident while housed at NBCI.  Paper No. 18, Ex. 5.  Plaintiff  appears to have unilaterally decided that  he would not participate in the remedy process.  As such, Plaintiff's claims against corrections personnel are subject to dismissal for failure to exhaust administrative remedies.  Unlike the circumstances in *Taylor v. Barnett*, 105 F.Supp. 483, 486 (E.D. Va. 2000), prison officials do not appear to have frustrated Plaintiff's attempts at exhaustion; instead, Plaintiff through his own actions failed to initiate his administrative remedies.

Even if Plaintiff had exhausted his available remedies, his claim would still fail.  In a failure to protect claim, a prisoner must show, first, that the harm he suffered was objectively serious, and

---

available for medical claims.

second, that prison officials acted with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The undisputed records before the Court reveal that Plaintiff complained of subjective knee and back pain as a result of his fall.  Assuming, arguendo, that such injuries were held to satisfy the first prong of the *Farmer* test, the second element is more problematic.

Deliberate indifference in the context of a failure to protect claim means that defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Unless a prison official actually makes this inference, he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy.  *See Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997); *see also Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997) ("[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact  that prison officials were therefore deliberately indifferent to his safety.").  In the instant case there is simply no evidence that Defendants knew that the step on the van was faulty and ready to break.  Even knowing that other steps had broken on other DOC vans, the Court does not find that Defendants knew that there was a risk of harm to Plaintiff using the steps on that van, and disregarded that risk.  Such conclusions are simply not supported by the record.  At most, Plaintiff's claim against the named correctional Defendants set forth a claim of negligence. [3]

The only named medical provider is Dr. Ross, the physician who first examined Plaintiff after the fall.  To state an Eighth Amendment claim for denial of medical care, Plaintiff must

---

[3] To the extent that it could be construed as raising state law claims, the Court would decline to exercise supplemental jurisdiction.  *See* 28 U.S.C. §1367(c)(3); *United Mine Workers v. Gibbs,* 383 U. S. 715, 726 (1966).

demonstrate that the actions of the medical defendant (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).   After Plaintiff's fall, correctional Defendants escorted Plaintiff to Dr. Ross who assessed Plaintiff as suffering from muscle spasm and provided him a knee wrap and analgesic pain relief.  Paper No. 23.  As Plaintiff was not housed at MCAC, Plaintiff's care was not followed by Dr. Ross, but rather by other medical care providers.  Plaintiff states that he does "not hold them (other medical personnel) accountable for the deliberate disregard to my injuries.. But I hold MCAC Doctor and Nurse for refusing to take x-ray in diagnosing my injury sooner than 3 months.  Because of that I suffered much pain."  [sic] Paper No. 23. The record, however, shows he was provided continued treatment including a back brace, muscle relaxer, and analgesic pain relievers for his injuries.   Plaintiff simply disagrees with the medical judgment of his health care providers.   Such disagreement with a course of treatment  does not provide the framework for a federal civil rights complaint but rather, at most, states a claim of negligence. *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975).   Likewise not every delay in providing medical care rises to a constitutional level. *See Mendoza v. Lynaugh***,** 989 F.2d 191 (5th Cir. 1993) (one year delay  in receiving physical therapy and back brace did not state a claim under §1983).  The Court simply cannot find from the uncontroverted medical records before it that the medical care received by Plaintiff was so egregious as to constitute an Eighth Amendment violation.

**Conclusion**

In light of the foregoing, Defendants' Motion for Summary Judgment shall be granted.   A separate order follows.

_____/s/_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

April 7, 2010